B 104   (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFF<br>**MATTHEW W. SMITH, in his sole capacity as the sole manager for reorganized BK RACING, LLC,** | DEFENDANTS<br>**DARRIN L. PAYNE, FELICIA PAYNE, BRBRC IRREVOCABLE TRUST, DLP TAX & ACCOUNTING SERVICES, PATRICIA GAMBINO, FVCBANK, JOHN PITRELLI, OLD DOMINION SETTLEMENTS, INC. d/b/a KEY TITLE,  and OLD DOMINION LAW, PLLC f/k/a ESKOVITZ, LAZARUS & PITRELLI, PLLC** |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br><br>Andrew T. Houston<br>Moon Wright & Houston<br>212 N. McDowell Street, Suite 200<br>Charlotte, North Carolina 28204<br>Telephone:  704-944-6560 | ATTORNEYS (If Known) |

| PARTY (Check one box only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin.<br>☐ Creditor   ☒ Other<br>☒ Trustee | PARTY (Check one box only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin.<br>☐ Creditor   ☒ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Claims for damages and injunctive relief for unfair trade practices, fraudulent transfer, civil conspiracy, violations of the automatic stay and other relief.

| NATURE OF SUIT |
|---|
| (Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.) |

**FRBP 7001(1)— Recovery of Money/Property**
☒ 11-Recovery of money/property  §542 turnover of property
☐ 12-Recovery of money/property  §547 preference
☐ 13-Recovery of money/property  §548 fraudulent transfer
☒ 14-Recovery of money/property  other

**FRBP 7001(2) — Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3)— Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner  §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41 -Objection / revocation of discharge §727(c),(d),(e)

**FRBP 7001(5) — Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6)— Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6)— Dischargeability (continued)**
☐ 61-Dischargeability  §523(a)(5), domestic support
☐ 68-Dischargeability  §523(a)(6), willful and malicious injury
☐ 63-Dischargeability  §523(a)(8), student loan
☐ 64-Dischargeability   §523(a)(15), divorce or separation Obligation (other than domestic support)
☐ 65-Dischargeability  other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief– imposition of stay
☒ 72-Injunctive relief— other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**PREP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**PREP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case—15 U.S.C. §78a et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand – At least $3,000,00.00 plus treble damages |
| Other Relief Sought | |

MWH: 10530.001; 00029007.1

| BANKRUPTY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>**BK Racing, LLC** | | BANKRUPTCY CASE NO.<br>18-30241 |
| DISTRICT IN WHICH CASE IS PENDING<br>Western | DIVISIONAL OFFICE<br>Charlotte | NAME OF JUDGE<br>J. Craig Whitley |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>*/s/ Andrew T. Houston* | | |
| DATE<br>August 30, 2023 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Andrew T. Houston | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management Electronic Case Filing system (CM/ECF), (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys**. Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature**. This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | |
|---|---|
| In re:<br><br>**BK RACING, LLC,**<br><br>                    Debtor. | Chapter 11<br><br>Case No: 18-30241 |
| **MATTHEW W. SMITH, in his capacity as the sole manager for reorganized BK RACING, LLC,**<br><br>                    Plaintiff,<br><br>      v.<br><br>**DARRIN L. PAYNE, FELICIA PAYNE, BRBRC IRREVOCABLE TRUST, DLP TAX & ACCOUNTING SERVICES, PATRICIA GAMBINO, FVCBANK, JOHN PITRELLI, OLD DOMINION SETTLEMENTS, INC. d/b/a KEY TITLE,  and OLD DOMINION LAW, PLLC f/k/a ESKOVITZ, LAZARUS & PITRELLI, PLLC.**<br><br>                    Defendants. | Adversary Proceeding No.: 23-_____ |

## **COMPLAINT**

NOW COMES the plaintiff, Matthew W. Smith (the "Plaintiff"), in his capacity as the sole manager for reorganized BK Racing, LLC (the "Reorganized Debtor"), and hereby alleges as follows:

### I.  PARTIES

1.      The Plaintiff is the duly appointed, qualified, and acting sole manager of the Reorganized Debtor pursuant to the confirmed plan of liquidation in the Chapter 11 base case of the Reorganized Debtor.

2.      The Reorganized Debtor[1] is the co-plaintiff, which is a North Carolina limited liability company originally formed in December 2011.

3.      Defendant Darrin L. Payne ("Darrin Payne") is an individual and resident of the Commonwealth of Virginia, residing at 7311 Reservation Drive, Springfield, Virginia 22153.

4.      Defendant Felicia Payne ("Felicia Payne") is an individual and resident of the Commonwealth of Virginia, residing at 7311 Reservation Drive, Springfield, Virginia 22153.

5.      Defendant DLP Tax & Accounting Services ("DLP") is an unincorporated sole proprietorship owned and/or controlled by Darrin Payne.  To the extent DLP engages in any business, its principal place of business is located at 7311 Reservation Drive, Springfield, Virginia 22153.

6.      Defendant BRBRC Irrevocable Trust (the "BRBRC Trust") is a sham trust established by Ronald Devine for the purpose of hiding and concealing the assets of Ronald and Brenda Devine (the "Devines") to defraud their creditors, including the Plaintiff and the Reorganized Debtor.  Darrin Payne is the current trustee of the BRBRC Trust, and the BRBRC Trust is located at 7311 Reservation Drive, Springfield, Virginia 22153.

7.      Defendant FVCbank ("FVC") is a corporation organized under the laws of the Commonwealth of Virginia, with its principal place of business located at 11325 Random Hills Road, Suite 240, Fairfax, Virginia 22030.

8.      Defendant Patricia Gambino ("Gambino") is an individual and resident of the Commonwealth of Virginia, residing at 9413 Ox Road, Lorton, Virginia 22079.

9.      Defendant John F. Pitrelli ("Pitrelli") is an individual and resident of the Commonwealth of Virginia, residing at 6505 Burke Woods Drive, Burke Virginia 22015.

---

[1] For the sake of clarity and consistency, and to avoid using multiple definitions, the Plaintiff refers to BK Racing, LLC as the "Reorganized Debtor" in this Complaint even when circumstances illustrate that BK Racing, LLC was operating prior to the bankruptcy case or acting as a debtor in possession prior to confirmation of the plan.

10.     Defendant Old Dominion Law, PLLC f/k/a Eskovitz, Lazarus & Pitrelli, PLLC ("Pitrelli Law") is a professional limited liability company organized under the laws of the Commonwealth of Virginia, with its principal place of business located at 7010 Little River Turnpike, Suite 240, Annandale, Virginia 22003.

11.     Defendant Old Dominion Settlements, Inc. d/b/a Key Title ("Key Title") is a corporation organized under the laws of the Commonwealth of Virginia, with its principal place of business located at 7010 Little River Turnpike, Suite 220, Annandale, Virginia 22003.

12.     As applicable, defendants Darrin Payne, Felicia Payne, DLP, BRBRC Trust, FVC, Gambino, Pitrelli, Pitrelli Law, and Key Title are collectively referred to as the "Defendants."

## II. JURISDICTION AND VENUE

13.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the terms of the Reorganized Debtor's confirmed bankruptcy plan. Jurisdiction is also proper pursuant to U.S.C. § 1332 as complete diversity exists and the amount in controversy exceeds $75,000.00.

14.     This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

15.     Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1409.

16.     The statutory predicates for relief are, among others, 11 U.S.C. §§ 105, 362, 502, 541, 542, 544, 1129, and 1141.

17.     The Plaintiff commences this action pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

## III. INTRODUCTION

18.     The Defendants have engaged in an intentional, long-running conspiracy with Ronald Devine and Brenda Devine to hide their assets in order to defraud the Reorganized

Debtor, the bankruptcy estate, and the multitude of other creditors to whom they and their various entities are liable.

19.     Together, Ronald Devine, Brenda Devine, and their co-conspirators have worked cooperatively to conceal cash and other assets from creditors. The mechanisms employed in their ongoing conspiracy include, but are not limited to, the creation and administration of a sham trust, the execution of false loan documents intended only to encumber valuable real estate for personal gain, the surreptitious use of one another's bank accounts to hide assets and self-dealing transfers, and the mischaracterization of loans and sales in a bogus attempt to profit personally without accounting to the legitimate creditors of Ronald Devine, Brenda Devine and their affiliates.

20.     The Defendants' actions, taken in concert with Ronald and Brenda Devine, are ongoing and continue to cause substantial loss and harm to the Reorganized Debtor's bankruptcy estate up to the present. Their conduct is not only in purposeful derogation of the legitimate rights of creditors, but also in knowing and intentional defiance of this Court's orders and the United States Bankruptcy Code.

## IV. BACKGROUND FACTS

**A. The Judgment Debtors owe the Reorganized Debtor in Excess of $31,000,000.00 and their Assets are Property of the Bankruptcy Estate.**

21.     The Reorganized Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court on February 15, 2018.

22.     Pursuant to the terms of the Reorganized Debtor's confirmed plan of liquidation: (i) all assets and rights of the bankruptcy estate vested in the Reorganized Debtor, and (ii) the Plaintiff was appointed as the sole manager of the Reorganized Debtor and tasked with, among other things, investigating and pursuing litigation claims for the benefit of creditors.

23.    Ronald Devine and Brenda Devine owned and operated the Reorganized Debtor prior to its bankruptcy filing.  While the company was under the Devines' control, its financial performance was extremely poor, and its continued operations were untenable.

24.    Nevertheless, prior to its bankruptcy filing, the Reorganized Debtor operated for years even though it could not service its long-term debt obligations, or routinely pay its basic operating expenses such as vendors, employees, health insurance premiums and payroll taxes.

25.     While the Reorganized Debtor's pre-petition operations were consistently unprofitable, the Devines simultaneously used the company and a byzantine web of other entities under their control (with hundreds of bank accounts) to fraudulently siphon off millions of dollars from the Reorganized Debtor for their personal benefit.

26.    The Devines were well aware that they had stripped the company of its assets while failing to pay creditors when they filed the Reorganized Debtor's bankruptcy case, and that the Reorganized Debtor and its creditors had substantial claims against them.

27.    The Devines attempted to conceal their unscrupulous actions by knowingly and intentionally withholding information about their insider transactions from the Reorganized Debtor's bankruptcy counsel, even though they were aware such information must be disclosed in the filed schedules as required by the Bankruptcy Code.

28.    When pressed by the Reorganized Debtor's counsel, Mr. Henderson, to provide the necessary information, Ronald Devine defiantly refused, saying: "I don't want to give the enemies anymore ammo."

29.    To further conceal the Devines' multiple frauds on creditors, Ronald Devine caused the company to oppose a motion to appoint a Chapter 11 trustee when it was supported by all creditors in the case and was plainly warranted based on his pre- and post-bankruptcy mismanagement of the company.

30.     The Devines' attempts to cover up their transactions with the Reorganized Debtor proved unsuccessful, and the Court initially appointed the Plaintiff as Chapter 11 trustee in this case on March 30, 2018.

31.     On February 14, 2020, the Plaintiff filed a complaint on behalf of the Reorganized Debtor against Ronald Devine; Brenda Devine; the Randall Devine 2010 Irrevocable Trust; the Christopher Devine 2010 Irrevocable Trust; the Benjamin Devine 2010 Irrevocable Trust; BRC Loans, LLC; BRC Real Estate Holdings, LLC; A&R Foods, Inc.; Virginia Racers Group, LLC; Property Services, Inc.; US Financial Companies, LLC; and the Devine Family Foundation (collectively, the "Judgment Debtors") in that case captioned *Smith v. Devine et al*., Adv. Pro. No. 20-3014 (the "Action").

32.     The claims brought in the Action were known and expected by the Devines, and the facts giving rise to the claims in the Action related to transactions the Judgment Debtors entered into between May 2012 and March 2018 (post-petition).

33.     The Court entered a *Judgment* in the Action on December 19, 2022 (the "Judgment"). [Adv. Pro. No. 20-3014, Doc. 96]. In pertinent part, the Judgment awarded damages to the estate against the Judgment Debtors, jointly and severally, in the amount of $31,094,099.89, together with attorneys' fees and costs.

34.     Additionally, the Court entered judgment on the Plaintiff's fourteenth claim for relief (alter ego/piercing the corporate veil), thereby determining that the Devines and the other Judgment Debtors were alter egos of each other and the Reorganized Debtor.

35.     Thus, the Judgment Debtors' assets are property of the bankruptcy estate by operation of law.

**B.  Relevant Background Regarding the Devines and their Financial Problems**

36.    Ronald and Brenda Devine were once highly successful and affluent individuals. Ronald Devine operated multiple Burger King franchises in the Washington, DC metropolitan area.  The Devines were also the majority owners of the Reorganized Debtor, which operated a NASCAR Cup Series racing team from 2012 until 2018.

37.    Beginning around 2013, and continuing to this day, the Devines and the other Judgment Debtors have been the subject of multiple lawsuits, judgments, and federal tax liens related to unpaid debts and payroll tax obligations owed to the IRS.

38.    For example, Burger King Corporation filed a complaint against Ronald Devine and A&R Foods, Inc. on November 14, 2013. Burger King sought damages and injunctive relief based on the operation of fraudulent, unlicensed Burger King restaurants by the defendants.  This lawsuit ultimately led to Ronald Devine losing all of his Burger King franchises.

39.    On October 8, 2014, SunTrust Bank sued Ronald Devine and others for approximately $2 million in that case captioned *SunTrust Bank v. BK Racing LLC, Ronald C. Devine and Arthur Morisette, Jr.* filed in the Superior Court of Iredell County, North Carolina, Case No. 14-CVS-2198.

40.    Race Engines Plus, LLC subsequently named Ronald Devine as a defendant in its suit for damages related to the 2013 through 2015 race seasons in the Superior Court of Cabarrus County, North Carolina, captioned *BK Racing, LLC v. Race Engines Plus, LLC et al, LLC, et al.*, Case No. 14-CVS-3618.

41.    By 2017, the Devines and their affiliated entities were anticipating litigation, had been sued by multiple third parties, or were the subject of judgments and federal tax liens.

42.    Between April 2017 and October 2018, the Devines and the other Judgment Debtors were the subject of the following loan defaults, judgments and federal tax lien filings.

43.    On April 14, 2017 and May 15, 2017, Ronald Devine executed two (2) forbearance agreements with Union Bank & Trust ("UBT") where he: (a) acknowledged that certain loans made by UBT to Mr. Devine and his companies were in default, (b) confirmed the total indebtedness owed to UBT as of March 20, 2017 was $9,741,055.76, plus attorneys' fees, costs and charges, and (c) confirmed that he was jointly and severally liable for the total indebtedness due and owing to UBT without defense.

44.    The following judgments and tax liens were recorded in Fairfax County, Virginia against the Devines and their affiliated entities during 2017 and 2018:

(a) On September 22, 2017, a confession of judgment in the amount of $838,220.53 was entered in favor of MVB Bank, Inc. against Ronald Devine and BRC Real Estate Holdings, LLC;

(b) On January 19, 2018, a judgment in the amount of $521,894.04 was entered in favor of Aritec Inc. against Ronald Devine and Brenda Devine;

(c) On January 19, 2018, a judgment in the amount of $105,829.21 was entered in favor of Eileen E. Bildman, Trustee, against Ronald Devine and Brenda Devine;

(d) On January 20, 2018, a Notice of Federal Tax Lien was recorded against Ronald Devine related to unpaid federal taxes from 2014 in the amount of $657,806.25;

(e) On March 6, 2018, a Notice of Federal Tax Lien was recorded against Ronald Devine related to unpaid federal taxes from 2014 in the amount of $2,228.96;

(f) On April 10, 2018, a Notice of Federal Tax Lien was recorded against Ronald Devine related to unpaid federal taxes from 2016-2017 in the amount of $747,928.74;

(g) On May 18, 2018, a confession of judgment in the amount of $500,000.00 was entered in favor of Bruce Forbes and Lois Forbes against Ronald Devine and Springfield Tower, Inc.; and

(h) On October 31, 2018, a Notice of Federal Tax Lien was recorded against Ronald Devine and Brenda Devine related to unpaid federal taxes from 2014 in the amount of

$2,291,291.36.

45.     In sum, in 2017 and 2018, and at all times through the present, the Devines and the other Judgment Debtors were insolvent, they were not and are not paying their debts when they come due, and they were the subject of substantial debts and judgments that they were incapable of paying.

**C. The Devine Asset Concealment Scheme**

*Summary of the Fraudulent Scheme*

46.     Faced with the above-referenced debts, and shortly after the Plaintiff was appointed as the Chapter 11 trustee in this case and the Devines knew they would likely be in litigation with the Plaintiff, the Devines and the Defendants devised and implemented a fraudulent scheme to: (a) divest the Devines of millions of dollars of assets to defraud the Plaintiff, the Reorganized Debtor, the bankruptcy estate, and the Devines' other creditors, including the IRS, while (b) still retaining the benefit and use of their assets.  This scheme is referred to as the "Devine Asset Concealment Scheme" in this Complaint.

47.     The Devine Asset Concealment Scheme started in 2018, continues to this day, and consists of, among other things, the following: (a) establishing the sham BRBRC Trust, (b) depositing the Devines' funds and titling interests in property in the name of the BRBRC Trust to hide the Devines' assets from creditors, (c) depositing the Devines' funds in accounts titled in the name of the Defendants and having the Defendants pay the Devines' personal expenses, and (d) entering into sham "strawman" transactions designed to benefit the Devines and to hide assets from the Devines' creditors.

48.     This fraudulent scheme to hide assets was designed by Ronald Devine and defendant Pitrelli in the Summer of 2018.  In speaking to this precise scheme, defendant Pitrelli said on August 14, 2018, that Ronald Devine "should [assign his assets] to an Irrevocable Trust

he needs to form . . . [because] [a]nything involving him personally is subject to attack. . . ." by his creditors.

49.     Consistent with that advice from defendant Pitrelli, the Devines, working in concert with the Defendants, have transferred, secreted, hidden and concealed the Devines' assets to escape their debts and defraud their creditors.

### D.  The Defendants' Roles in the Devine Asset Concealment Scheme

#### *The Pitrelli Defendants*

50.     Defendant Pitrelli and his wife are long-time neighbors and close personal friends of the Devines.

51.     Defendant Pitrelli is an attorney licensed to practice law in Virginia and Florida. He holds himself out as an expert in corporate law, real estate transactions and estate planning.

52.     Pitrelli has served as Ronald Devine's personal attorney, as well as the attorney and registered agent for most of Mr. Devine's companies, including but not limited to the following Judgment Debtors: Virginia Racers Group, LLC; BRC Real Estate Holdings, LLC; BRC Loans, LLC; A&R Foods, Inc.; Property Services, Inc., and US Financial Companies, LLC.

53.     Pitrelli Law operates a law firm in Annandale, Virginia.  At all times relevant hereto, defendant Pitrelli was an owner, partner and agent of Pitrelli Law acting within the course and scope of his employment.

54.     Key Title holds itself out to the public as a full-service title and settlement agency operating in the Washington, DC metropolitan area.  At all times relevant hereto, defendant Pitrelli was an owner, partner and/or agent of Key Title acting within the course and scope of his employment.

55.     At all relevant times, the Pitrelli Defendants knew about the Devines' substantial liabilities and their fraudulent intent to hide assets to defraud their creditors.

56.    In furtherance of the Devine Asset Concealment Scheme, the Pitrelli Defendants knowingly and intentionally devised and implemented the fraudulent scheme by, among other things: (a) advising Ronald Devine to form the sham BRBRC Trust, (b) advising Ronald Devine to transfer assets to the BRBRC Trust and other entities to hide assets from creditors while retaining the benefit of those assets, (c) advising Ronald Devine about how to structure transactions in a way to keep assets out of the Devines' personal names to defraud creditors, (d) preparing documents necessary to facilitate the fraudulent scheme including the trust documents, contracts, and sham instruments discussed below, and (e) closing transactions for the benefit of the Devines in furtherance of this fraudulent scheme.

### *The FVC Defendants*

57.    Defendant FVC operates banks in the Washington, DC metropolitan area.  Prior to the petition date, the Reorganized Debtor and many of the Judgment Debtors maintained their bank accounts with FVC.

58.    At all relevant times, Gambino was a Vice President of defendant FVC, the Branch Manager of the Springfield, Virginia branch of FVC, and was acting within the course and scope of her employment with FVC.

59.    Defendant Gambino was the FVC employee who oversaw and was responsible for the banking relationship with the Reorganized Debtor, the Judgment Debtors, and Ronald Devine's other affiliates.

60.    Defendant Gambino was also a friend of Ronald Devine.  Gambino routinely came to Ronald Devine's office and had lunch with Mr. Devine and the employees of his businesses.

61.    Defendant Gambino served as the original trustee of the BRBRC Trust from its formation until September 25, 2020.

62.     Gambino routinely conducted business and facilitated transactions on behalf of the BRBRC Trust from her office at the FVC branch in Springfield, Virginia during business hours.  She also routinely did business on behalf of the BRBRC Trust using her FVC bank email account.

63.     At all relevant times, the FVC Defendants knew about the Devines' substantial liabilities and their fraudulent intent to hide assets to defraud their creditors.

64.     In furtherance of the Devine Asset Concealment Scheme, the FVC Defendants implemented the fraudulent scheme by, among other things: (a) knowingly serving as the trustee of the sham BRBRC Trust, (b) depositing checks and other funds of Ronald Devine and the Judgment Debtors into accounts titled in the name of the BRBRC Trust to hide the funds from their creditors, and (c) writing checks and wiring funds to pay the Devines' personal expenses.

### *The Payne Defendants*

65.     Defendants Darrin Payne and Felicia Payne are married.

66.     Darrin Payne holds himself out as a tax consultant, but he is not a licensed certified public accountant in the Commonwealth of Virginia.

67.     Darrin Payne does business under the moniker of DLP.  DLP is a sole proprietorship owned, operated, and controlled by Darrin Payne.

68.     Darrin Payne also is or was an employee or independent contractor of Judgment Debtor A&R Foods, Inc. as he maintained an A&R Foods, Inc. email account.

69.     Beginning in approximately early 2020, Darrin Payne began actively assisting Ronald Devine and other defendants in their opposition to adversary proceedings filed by the Plaintiff before this Court.

70.    Similarly, in early 2020, Darrin Payne was also assisting Ronald Devine in defending a fraud lawsuit commenced in Fairfax County, Virginia, in that case captioned *Kiley v. Devine*, Fairfax County, Virginia Circuit Court Case No. 2019-8081.

71.    Notwithstanding his participation in the referenced litigation, Defendant Payne became the trustee of the BRBRC Trust on September 25, 2020, when defendant Gambino resigned, and has continued to serve as the trustee through the present time.

72.    At all relevant times, the Payne Defendants knew about the Devines' substantial liabilities and their fraudulent intent to hide assets to defraud their creditors.

73.    In furtherance of the Devine Asset Concealment Scheme, the Payne Defendants implemented the fraudulent scheme by among other things: (a) knowingly serving as the trustee of the sham BRBRC Trust, (b) depositing checks and other funds of the Devines and the Judgment Debtors into accounts titled in the name of the BRBRC Trust to hide the funds from creditors, (c) writing checks and wiring funds from the BRBRC Trust's accounts to pay the Devines' personal expenses, (d) depositing the funds of the Devines and the Judgment Debtors into their personal accounts to hide them from creditors, and (e) paying the personal expenses of the Devines and the BRBRC Trust from their personal bank accounts.

### Formation of the BRBRC Trust

74.    The BRBRC Trust was allegedly established pursuant to a document titled BRBRC Irrevocable Trust dated August 29, 2018 (the "Trust Document").  **Ex. 1.**

75.    The Trust Document states that the BRBRC Trust was established by Mr. Devine as an irrevocable self-settled spendthrift trust.  The Devines and their three children were designated as the purported beneficiaries of the trust.

76.     Article II of the Trust Document provides that the stated purpose of the trust is to "insure the proper support, maintenance and medical care, including living and household expenses of the beneficiary."

77.     The BRBRC Trust is a complete sham and fraud, which was created solely as a vehicle to hide money and property in furtherance of the Devine Asset Concealment Scheme.

78.     The BRBRC Trust was formed based on the advice of the Pitrelli Defendants, and the Trust Document was drafted and prepared by the Pitrelli Defendants with the specific purpose of assisting the Devines and the Judgement Debtors in hiding their assets from creditors.

### The Cash Transfers to the BRBRC Trust

79.     Consistent with their fraudulent purpose in establishing the BRBRC Trust, the Devines and the other Judgment Debtors immediately started transferring assets to the BRBRC Trust upon its creation to defraud  the Reorganized Debtor, the bankruptcy estate and their other creditors.

80.     Specifically, beginning in September 2018, the Devines and the other Judgment Debtors began depositing their funds, cash and the proceeds of transactions they entered into in a Wells Fargo bank account titled in the name of the BRBRC Trust.

81.     Between September 7, 2018 and May 10, 2023, the Devines and the Judgment Debtors deposited or caused funds in the amount of at least $666,252.52 to be deposited into the Wells Fargo bank account titled in the name of the BRBRC Trust (the "Cash Transfers"). Attached hereto as **Ex. 2** is a summary of the dates and amounts of the Cash Transfers.

82.     The Cash Transfers were facilitated and implemented by the trustees of the BRBRC Trust (Gambino and Darrin Payne) during the time each served as the trustee of this sham trust, with knowledge of the fraudulent purpose of the Cash Transfers and in furtherance of the Devine Asset Concealment Scheme.

### *The SFC Equity Transfer to the BRBRC Trust*

83.     Defendant Ronald Devine also caused an interest he owned in real property worth in excess of $2 million to be transferred to and titled in the name of the BRBRC Trust as part of the Devine Asset Concealment Scheme.

84.     Specifically, in August 2018, Ronald Devine owned 50% of an entity called SFC Properties, LLC ("SFC"), which owned real property known as the "Airport Commerce Center" located at 10941 Samuel Trexler Drive, Manassas, Virginia (the "Property").

85.     The other 50% owner of SFC was Dwight Schar, a former owner of the Washington Commanders.

86.     Mr. Schar informed Ronald Devine that he wanted to be bought out of this deal for $600,000.00.

87.     Rather than selling the Property and distributing the proceeds to SFC's owners, which would have made the equity in the Property available to Ronald Devine's creditors, Ronald Devine – with the assistance and advice of the Pitrelli Defendants – entered into a deceptive series of transactions designed to ensure that Ronald Devine retained the value from the Property without paying his creditors (the "SFC Equity Transfer").

88.     To facilitate the SFC Equity Transfer, Ronald Devine, with advice and guidance from the Pitrelli Defendants, arranged for a "buyer" to "purchase" the Property for $600,000.00, with the initial sale proceeds to be paid to Mr. Schar.  However, the "purchase" and purported "sale" were in reality a disguised loan from the so-called "buyer."

89.     The disguised loan was to be repaid when the Property was subsequently flipped to a third party, with the sale proceeds: (a) first going to satisfy the $600,000.00 from the purported lender plus additional charges, and (b) the remainder being transferred to the BRBRC Trust to shield the funds from Ronald Devine's creditors.

90.     In fact, in contemporaneous emails dated August 14, 2018, defendant Pitrelli stated as follows:

> I think there needs to be two assignments.  The first one should be from Devine to an Irrevocable Trust he needs to form.  The second one should be between his Trust and GGP, LLC.  **Anything involving him personally is subject to attack**.  Contract can be simple and can be modeled after the existing one with a change in price and settlement date.  I will forward the unsigned copy to you.

(emphasis added).

91.     The first step in the SFC Equity Transfer occurred on or about August 30, 2018, when the Property was "sold" for $600,000.00 to an entity named Green & Gold Properties, LLC ("G&G"), and the sum of $600,000.00 was paid to Mr. Schar.

92.     In the Fall of 2021, the second step of the transaction was ostensibly completed when G&G sold the Property to a third party for $3 million.  Disputes thereafter arose between G&G and Ronald Devine, leading Mr. Devine and the BRBRC Trust to file suit against G&G in the Circuit Court of Fairfax County, Virginia, seeking damages of approximately $2.1 million.

93.     Although it did not yield the results contemplated by the Devines or their confederates, the SFC Equity Transfer was devised, implemented, and closed by the Pitrelli Defendants in furtherance of the Devine Asset Concealment Scheme to hide assets from the Devines' creditors.

### The BRBRC Trust Pays the Devines' Personal Expenses

94.     Consistent with its fraudulent purposes, the Devines have not only utilized the BRBRC Trust to shield their assets from legitimate creditors, but have also used property held in the trust to pay their personal living expenses.

95.     Among other things, the BRBRC Trust has paid and continues to pay the following living expenses of the Devines:

(a)  country club dues,

(b)  home mortgages,

(c)  property taxes,

(d)  health insurance premiums,

(e)  cell phone bills,

(f)  credit card bills,

(g)  legal bills, and

(h)  life insurance premiums.

96.    The payment of the Devines' personal expenses by the BRBRC Trust has been knowingly and intentionally facilitated and implemented by the trustees of the BRBRC Trust (Gambino and Darrin Payne) during the time they each served as the trustee of this sham trust in furtherance of the Devine Asset Concealment Scheme.

### *The Concealment of the BRBRC Trust*

97.    The Devines have purposefully concealed the BRBRC Trust and its assets from the Plaintiff and other of their creditors.

98.    The Plaintiff sought formal discovery from the Devines pursuant to Bankruptcy Rule 2004 in May of 2019.

99.    Among other things, the Plaintiff issued subpoenas to both Ronald Devine and Brenda Devine requesting documents and information related to any family trusts.

100.    After the Devines opposed the discovery requests multiple times, the Court overruled their objections and ordered them to produce the information sought by the Plaintiff.

101.    Despite the Court's clear and unambiguous directive, the Devines willfully concealed the existence of the BRBRC Trust and intentionally failed to produce any documents related to the BRBRC Trust or its assets.

102.    Years later, the Plaintiff learned of the BRBRC Trust's existence indirectly, from documents he obtained by subpoena from a third-party accounting firm.

103.    This Court previously held Ronald Devine in civil contempt for willfully failing to comply with the Court's discovery order in that *Order Holding Ronald C. Devine in Civil Contempt* entered on October 12, 2021. [Adv. Pro. No. 20-3014, Doc. 43].

104.    The Plaintiff then issued document subpoenas to the BRBRC Trust in the Action requesting, among other things, the following: (a) communications between the Trustee and the Devines, and (b) emails and documents evidencing the BRBRC Trust's holdings and assets.

105.    Like the Devines themselves, the BRBRC Trust willfully failed to produce all responsive documents in response to the subpoenas.

106.    The Plaintiff also served discovery on the Devines in the Action requesting, among other things, communications between the trustee of the BRBRC Trust and the Devines, and emails and documents evidencing the BRBRC Trust's holdings and assets.

107.    The Devines objected to producing documents responsive to these requests.

108.    The Court again overruled the Devines' objections to producing the requested information in its *Order Granting Motion to Compel Discovery* entered on October 12, 2021 (the "Order Compelling Discovery"). [Adv. Pro. No. 20-3014, Doc. 44].

109.    Notwithstanding the foregoing, the Devines willfully failed to produce all responsive documents pursuant to the Plaintiff's discovery and the Order Compelling Discovery.

### *The Strawman/Springfield Land Development LLC Transaction*

110.    Ronald Devine also hid assets by entering into other strawman transactions, which were devised and implemented by the Pitrelli Defendants, in furtherance of the Devine Asset Concealment Scheme.

111.    In 2018, Ronald Devine owned 100% of the membership interests in an entity called Springfield Land Development, LLC ("SLD").  SLD owned real property located at 6235 Brandon Ave., Springfield, Virginia (the "Brandon Property").

112.    SLD defaulted on a $1 million secured loan made by an entity called Healthy Coffee, LLC ("Healthy Coffee") in February 2018.  Healthy Coffee accelerated the loan and commenced foreclosure proceedings.

113.    To delay foreclosure and preserve value for Ronald Devine, while keeping his assets away from creditors, Ronald Devine and the Pitrelli Defendants devised and implemented a sham strawman transaction involving Mr. Devine's personal assistant, Nancy O'Haro.  This transaction was designed to extract value from the Brandon Property while hiding Mr. Devine's interest in the property from creditors.

114.    In June 2018, Ronald Devine and the Pitrelli Defendants prepared sham loan documents including a *Deed of Trust* dated June 21, 2018 (the "Deed of Trust"), and a *Deed of Trust Note with Power of Attorney Authorizing Confession of Judgment* dated June 21, 2018 (the "Note," and together with the Deed of Trust, the "Loan Documents").

115.    The Loan Documents were prepared by the Pitrelli Defendants in furtherance of the Devine Asset Concealment Scheme.

116.    The Loan Documents purport to memorialize a $500,000.00 secured loan made by Ms. O'Haro to SLD.

117.    No such loan was ever made by Ms. O'Haro to SLD, and the purported transaction was a complete sham.

118.    Mr. Devine then caused SLD to seek bankruptcy protection to delay Healthy Coffee's attempt to foreclose on its collateral.

119.   Ultimately, Ronald Devine, not Ms. O'Haro, negotiated for a purchase and assignment of the sham Loan Documents for $350,000.00.

120.   The sale proceeds totaling $350,000.00 were deposited into bank accounts titled in Ms. O'Haro's name on June 27, 2019 ($50,000.00) and July 30, 2019 ($300,000.00), respectively.

121.   Upon the receipt of the second installment, Ms. O'Haro immediately transferred the funds into other accounts titled in her name.  She then wrote a check the same day (July 30, 2019) to Judgment Debtor BRC Loans, LLC in the amount of $150,000.00.

122.   The remaining funds were left on deposit in accounts titled in Ms. O'Haro's name and have been used to pay Ronald Devine's personal expenses since that date.

123.   The referenced SLD strawman transaction was done in furtherance of the Devine Asset Concealment Scheme and it was devised and implemented by the Pitrelli Defendants in furtherance of this common scheme to hide assets from the Devines' creditors.

***The Devines Used the Payne Defendants' Bank Accounts to Further the Fraudulent Scheme***

124.   In addition to the transactions identified above, and in furtherance of the Devine Asset Concealment Scheme, the Payne Defendants have allowed the Devines and the Judgment Debtors to deposit their funds into the Payne Defendants' bank accounts to conceal the money from creditors.

125.   The Payne Defendants have also paid the Devines' and the Judgment Debtors' personal expenses from the Payne Defendants' bank accounts and transferred funds to or for the benefit of the Devines and the Judgment Debtors from the Payne Defendants' bank accounts.

126.   Among others, the Payne Defendants own the following bank accounts: (a) Darrin Payne and DLP own a joint bank account at United Bank, with account number ending -1975 (the "United Account"), (b) Darrin Payne and Felicia Payne own joint bank accounts with Wells

Fargo Bank, with account numbers ending -5376 and -4611 (the "Wells Accounts"), and (c) Darrin Payne and Felicia Payne own a joint bank account with Blue Ridge Bank, with account number ending -1652 (the "BRB Account," and together with the United Account, and the Wells Account, the "Payne Accounts").

127.    Between July 27, 2020 and August 10, 2022, the Devines and the Judgment Debtors have deposited or caused to be deposited the sum of at least $42,078.00 into the United Account and the Wells Accounts (the "Payne Transfers").   Attached hereto as **Ex. 3** is a summary of the dates and amounts of the deposits.

128.    Between February 11, 2020, and June 2, 2023, the Payne Defendants have paid the sum of at least $244,115.22 to or for the benefit of the Devines and the other Judgment Debtors from the Payne Accounts (the "Payne Payments").   Attached hereto as **Ex. 4** is a summary of the dates and amounts of the payments.

129.    Among other things, the Payne Defendants have paid the following expenses of the Devines and the Judgment Debtors, or made the following transfers for the benefit of the Devines and the Judgment Debtors, from the Payne Accounts:

(a)  Payment of the Devines' legal fees owed to The Coppola Firm, Faircloth Law, James F. Davis, P.C., Chap Peterson & Associates and Essex Richards;

(b)  Payments to Ronald Devine's late mother, Eileen Carrol Devine;

(c)  Payments to the BRBRC Trust;

(d)  Payments to co-defendant Key Title;

(e)  Payment of the mortgage on the Devines' house;

(f)  Payment of the Devines' landscaping bills; and

(g)  Payments to Judgment Debtors Property Services, Inc. and U.S. Financial Companies, LLC, who Ronald Devine previously testified were defunct and conducted no business.

130.    The Payne Transfers and the Payne Payments have been knowingly and intentionally facilitated and implemented by the Payne Defendants in furtherance of the Devine Asset Concealment Scheme.

## V.  RESERVATION OF RIGHTS/EQUITABLE TOLLING

131.    Upon information and belief, the Devines and the Judgment Debtors have entered into other transactions that are not specifically identified in this Complaint as part of the Devine Asset Concealment Scheme, and have conspired with other persons or entities that are not named as defendants in this Complaint in furtherance of the Devine Asset Concealment Scheme.  For the avoidance of doubt, the Plaintiff: (a) seeks to recover all damages related to such additional transactions that are subsequently discovered from the Defendants and any other co-conspirators, and (b) specifically reserves the right to amend this Complaint to seek such additional damages or to name additional defendants in this case.

132.    To the extent that any of the Defendants allege that any statute of limitations has expired, the same being specifically denied by Plaintiff, the Defendants should be estopped from asserting any such defenses, and the Court should equitably toll the applicable limitations period.

133.    During his investigation into the applicable transactions, the Trustee has discovered evidence illustrating that the true nature and details of various transactions were concealed, not disclosed, or were intentionally mischaracterized to disguise their true nature.

134.    Further, the Trustee has acted diligently in conducting his investigation into the Reorganized Debtor's financial affairs including, without limitation, its claims against the Devines, the Defendants, and their co-conspirators, who are all engaged in a continual and ongoing conspiracy to defraud the Plaintiff, the Reorganized Debtors and the Devines' other creditors.

## FIRST CLAIM FOR RELIEF
Unfair and Deceptive Trade Practices
Pursuant to N.C. Gen. Stat. § 75-1.1 *et seq*.
(Against all Defendants)

135.    Plaintiff realleges all paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

136.    The Defendants have acted in concert with the Devines in devising and implementing the Devine Asset Concealment Scheme for the express purpose of  hindering, delaying and defrauding the Devines' creditors by hiding and transferring assets to escape their debts and to deceive their creditors.

137.    At all times herein, the Defendants' actions were in or affecting commerce.

138.    As to the attorney defendants (Pitrelli and Pitrelli Law), they are not entitled to the "learned profession" exemption because their actions in connection with the Devine Asset Concealment Scheme are not a necessary part of the practice of law.

139.    Rather, assisting clients in devising and implementing schemes to defraud their creditors is unnecessary and facially unethical under Rule 1.2 of the Virginia Rules of Professional Conduct[2] and the North Carolina Rules of Professional Conduct.[3]

140.    The Defendants' actions alleged herein were unfair and deceptive acts or practices in violation of N.C. Gen. Stat. § 1-75.1 *et seq*.

---

[2] Rule 1.2(c) of the Virginia Rules provides that "[a] lawyer shall not counsel a client to engage, or assist a client, in engaging in conduct the lawyer knows is criminal or fraudulent."  Va. R. Prof. Cond. 1.2(c).  *See also* comment [9] ("a lawyer may not knowingly assist a client in criminal or fraudulent conduct. There is a critical distinction between presenting an analysis of legal aspects of questionable conduct and recommending the means by which a crime or fraud might be committed with impunity.") and [12] ("a lawyer should not participate in a sham transaction; for example, a transaction to effectuate criminal or fraudulent escape of tax liability.")

[3] Rule 1.2(d) of the North Carolina Rules also provides that: " A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent." N.C. R. Prof. Cond. 1.2(d).  *See also* comment [10] ("There is also a distinction between giving a client legitimate advice about asset protection and assisting in the illegal or fraudulent conveyance of assets.").

141.     The Reorganized Debtor and its creditors were damaged as a direct and proximate result of the Defendants' unfair and deceptive trade practices.

## SECOND CLAIM FOR RELIEF
Avoidance of Actual Fraudulent Transfers
Pursuant to N.C. Gen. Stat. § 39-23.1 *et seq*. and/or Va. Code Ann. § 55.1-400
(Against the BRBRC Trust and Payne Defendants)

142.     Plaintiff realleges all paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

143.     The Plaintiff and the Reorganized Debtor are creditors of the Devines and the Judgment Debtors.

144.     The Cash Transfers and the SFC Equity Transfer were transfers of an interest of the Devines and the Judgment Debtors in property.

145.     The Payne Transfers were transfers of an interest of the Devines and the Judgment Debtors in property.

146.     The foregoing transfers were made with the actual intent to hinder, delay, or defraud an entity or entities to which the Devines and Judgment Debtors were or became indebted to, on or after the date that such transfers were made.

147.     As a result, Plaintiff and the Reorganized Debtor is entitled to avoid the Cash Transfers, the SFC Equity Transfer and the Payne Transfers and the entry of a monetary judgment in the amount of the applicable transfers pursuant to N.C. Gen. Stat. § 39-23.1 *et seq*. and/or Va. Code Ann. § 55.1-400.

## THIRD CLAIM FOR RELIEF
Avoidance of Constructive Fraudulent Transfers
Pursuant to N.C. Gen. Stat. § 39-23.1 *et seq*. and/or Va. Code Ann. § 55.1-401
(Against the BRBRC Trust and Payne Defendants)

148.     Plaintiff realleges all paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

149.    The Plaintiff and the Reorganized Debtor are creditors of the Devines and the Judgment Debtors.

150.    The Cash Transfers and the SFC Equity Transfer were transfers of an interest of the Devines and the Judgment Debtors in property.

151.    The Payne Transfers were transfers of an interest of the Devines and the Judgment Debtors in property.

152.    The Devines and the Judgment Debtors received less than reasonably equivalent value in exchange for the Cash Transfers, the SFC Equity Transfer and the Payne Transfers.

153.    The Devines and the Judgment Debtors were insolvent on the dates that the Cash Transfers, the SFC Equity Transfer and the Payne Transfers were made or became insolvent as a result of such transfers.

154.    At the time of the Cash Transfers, the SFC Equity Transfer and the Payne Transfers, the Devines and the Judgment Debtors were engaged in business or a transaction, or were about to engage in business or transactions, for which any property remaining with the transferor was an unreasonably small capital.

155.    At the time of the Cash Transfers, the SFC Equity Transfer and the Payne Transfers, the Devines and the Judgment Debtors intended to incur, or believed that they would incur, debts that were beyond their ability to pay as such debts matured.

156.    As a result, Plaintiff and the Reorganized Debtor is entitled to avoid the Cash Transfers, the SFC Equity Transfer and the Payne Transfers and the entry of a monetary judgment in the amount of the applicable transfers pursuant to N.C. Gen. Stat. § 39-23.1 *et seq.* and/or Va. Code Ann. § 55.1-401.

## FOURTH CLAIM FOR RELIEF

Claim for Monetary Sanctions and Attorneys' Fees
Pursuant to Va. Code Ann. § 55.1-403
(Against all Defendants)

157.    Plaintiff realleges all paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

158.    To the extent Virginia law applies, the Court may assess attorneys' fees and monetary sanctions against all parties who participated in the conveyance where a debtor or judgment debtor transfers property with the actual intent to hinder, delay or defraud its creditors.

159.    As discussed above, the Defendants in this case participated in, devised and implemented the Devine Asset Concealment Scheme with the intent and for the purpose of assisting the Devines in hiding assets to defraud their creditors.

160.    Accordingly, the Plaintiff and the Reorganized Debtor are entitled to a monetary sanction and its attorneys' fees incurred in bringing this litigation pursuant to Va. Code Ann. § 55.1-403.

## FIFTH CLAIM FOR RELIEF

Civil Conspiracy
(Against all Defendants)

161.    Plaintiff realleges all paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

162.    The Defendants entered an agreement with the Devines to perpetrate various unlawful acts and various lawful acts in an unlawful manner including, without limitation, devising and implementing the Devine Asset Concealment Scheme for the fraudulent purpose of allowing the Devines and the Judgment Debtors to defraud the Plaintiff, the Reorganized Debtor and their other creditors.

163.    These unlawful acts have inflicted actual pecuniary injury on the Plaintiff, the Reorganized Debtor and the creditors in this case.

164.    The Reorganized Debtor's injuries were directly and proximately caused by the Defendants' pursuit of their common scheme to engage in unlawful acts and lawful acts undertaken in an unlawful manner.

165.    The Reorganized Debtor and its creditors were damaged as a direct and proximate result of the Defendants' wrongful acts.

166.    As a result, the Defendants are each jointly and severally liable for the acts of any one of them taken in furtherance of the Devine Asset Concealment Scheme.

## SIXTH CLAIM FOR RELIEF
### Aiding and Abetting Fraud/Fraudulent Transfers
### (Against all Defendants)

167.    Plaintiff realleges all paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

168.    The Defendants knowingly induced, participated, advised and assisted the Devines in actively and deliberately defrauding their creditors by and through the transactions alleged in this Complaint that were taken in furtherance of the Devine Asset Concealment Scheme.

169.    As a result of the Defendants aiding and abetting the Devines in hiding and concealing their assets, assets have been dissipated that could have been used to pay the Plaintiff and the Reorganized Debtor in whole or in part.

170.    These unlawful acts have inflicted actual pecuniary injury on the Plaintiff, the Reorganized Debtor and the creditors in this case.

171.    The Reorganized Debtor's injuries were directly and proximately caused by the Defendants' pursuit of their common scheme to engage in unlawful acts and lawful acts undertaken in an unlawful manner.

172.    The Reorganized Debtor and its creditors were damaged as a direct and proximate result of the Defendants' wrongful acts.

173.    As a result, the Defendants are each jointly and severally liable for the acts of any one of them taken in furtherance of the Devine Asset Concealment Scheme.

### SEVENTH CLAIM FOR RELIEF
Conversion
(Against the BRBRC Trust and Payne Defendants)

174.    Plaintiff realleges all paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

175.    By virtue of the Court's alter ego determination in the Judgment, the assets of the Devines and the Judgment Debtors were property of the Reorganized Debtor and the bankruptcy estate by operation of law.

176.    The BRBRC Trust and the Payne Defendants assumed and exercised ownership and control over the Reorganized Debtor's funds and property without proper legal authority.

177.    Specifically, the BRBRC Trust and the Payne Defendants converted approximately $2.7 million of the Reorganized Debtor's funds consisting of the Cash Transfers, the SFC Equity Transfer and the Payne Transfers.

178.    The BRBRC Trust and the Payne Defendants converted these funds for their own use and benefit and to the exclusion of the Reorganized Debtor's rights in the funds without legal authorization.

179.    The Reorganized Debtor and its creditors were damaged as a direct and proximate result of the BRBRC Trust's and the Payne Defendants' conversion of funds.

### EIGHTH CLAIM FOR RELIEF
Stay Violation Pursuant to 11 U.S.C. §362(k)
(Against all Defendants)

180.     Plaintiff realleges all prior paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

181.     By virtue of the Court's alter ego determination in the Judgment, the assets of the Devines and the Judgment Debtors identified in this Complaint were property of the Reorganized Debtor and the bankruptcy estate by operation of law pursuant to 11 U.S.C. §541.

182.     The Defendants had actual notice of the Reorganized Debtor's bankruptcy case and the automatic stay.

183.     Nevertheless, the Defendants willfully violated  the automatic stay provisions of 11 U.S.C. § 362(a) by engaging in the Devine Asset Concealment Scheme, which consisted of the Defendants taking the actions alleged above to obtain possession and/or control over property of the Reorganized Debtor's bankruptcy estate.

184.     Accordingly, the Plaintiff is entitled to an award of actual damages, including costs and attorneys' fees, and punitive damages pursuant to 11 U.S.C. § 362(k).

## NINTH CLAIM FOR RELIEF
Turnover of Property to the Estate Pursuant to 11 U.S.C. § 542
(Against all Defendants)

185.     The Plaintiff realleges all paragraphs of this Complaint and incorporates them as if fully set forth herein.

186.     By virtue of the Court's alter ego determination in the Judgment, the assets of the Devines and the Judgment Debtors identified in this Complaint were property of the Reorganized Debtor and the bankruptcy estate by operation of law pursuant to 11 U.S.C. §541.

187.     The Defendants are in possession of the assets and property of the Devines and the Judgment Debtors, which assets constitute property of the Reorganized Debtor's bankruptcy estate pursuant to 11 U.S.C. § 541.

188.     The aforementioned property is not of inconsequential value to the bankruptcy estate and could be liquidated for the benefit of creditors.

189.     Therefore, the Plaintiff and the Reorganized Debtor are entitled to possession of the Devines' and the Judgment Debtors' property pursuant to 11 U.S.C. § 542.

**WHEREFORE**, Plaintiff respectfully prays the Court to:

1.     Enter a judgment against the Defendants, jointly and severally, on all applicable causes of action alleged in the Complaint;

2.     Enter an award of punitive damages or treble damages on all claims for which such damages are properly asserted;

3.     Enter injunctive and other equitable relief to prevent the Defendants continuing to engage in the Devine Asset Concealment Scheme or from transferring, dissipating, concealing, secreting, encumbering, or otherwise disposing of assets of the Devines or the Judgment Debtors;

4.     Enter a judgment awarding the Plaintiff the costs incurred in pursuing this action, together with all expenses and attorneys' fees to the extent permitted by applicable law;

5.     Enter an order and judgment directing an equitable accounting;

6.     Enter an order and judgment imposing a constructive trust or equitable lien in favor of the Plaintiff; and

7.     Grant such other and further relief as the Court deems just and proper.

Dated: Charlotte, North Carolina
         August 30, 2023

                              **MOON WRIGHT & HOUSTON, PLLC**

                              _/s/ Andrew T. Houston_
                              Andrew T. Houston (NC Bar No. 36208)
                              121 W. Trade Street, Suite 1950
                              Charlotte, North Carolina 28202
                              Telephone: (704) 944-6560
                              _Special Counsel for the Trustee_