# Exhibit 2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

**In re:**

**BK RACING, LLC,**

Debtor.

Chapter 11

Case No: 18-30241

**MATTHEW W. SMITH, sole manager
for reorganized BK RACING, LLC,**

Plaintiff,

**v.**

**DARRIN L. PAYNE** *et al.*,

Defendants.

Adversary Proceeding No.: 23-03030

## DECLARATION OF MATTHEW W. SMITH

Matthew W. Smith declares under penalty of perjury as follows:

1.      I am over 21 years of age, of sound mind, and otherwise competent to make this declaration.  I make this declaration based upon my personal knowledge.

2.      I am a Managing Director of The Finley Group, a turnaround management firm located in Charlotte, North Carolina.

3.      In March 2018, I was appointed as the Chapter 11 Trustee for the above-captioned debtor, BK Racing, LLC (the "Debtor").

4.      I am currently serving as the reorganized Debtor's sole manager, pursuant to the terms of the confirmed bankruptcy plan.

5.      I am the plaintiff in the above-captioned case.

6.      I submit this declaration in support of the *Motion for Entry of Default Judgment* filed contemporaneously with this declaration where I am seeking entry of the proposed judgment in the amount of $9,474,991.56 (the "Judgment").

### I.   Relevant Procedural Background

7.      I initiated this action by filing the Complaint on August 30, 2023.

8.      The Complaint alleges that Ronald Devine and Brenda Devine (the "Devines")— the Debtor's former owners—fell into significant financial distress starting in 2013 and continuing through the present as they were the subject of multiple lawsuits, judgments, tax liens, and other debts.

9.      The Complaint further alleges that when the Devines were faced with the referenced litigation, liens and debts, that they engaged in a long-running and ongoing conspiracy with the BRBRC Irrevocable Trust (the "BRBRC Trust") and others designed to: (a) divest the Devines of millions of dollars of assets to defraud the Plaintiff, the Reorganized Debtor, the bankruptcy estate, and the Devines' other creditors, including the IRS, while (b) still allowing the Devines to retain the benefit and use of their assets.

10.     The Complaint specifically alleges that the Devines' asset concealment scheme was devised, implemented and facilitated by the BRBRC Trust and other co-conspirators and consisted of, among other things, the following: (i) establishing the BRBRC Trust for the purpose of hiding the Devines' assets from creditors, (ii) transferring $666,252.52 of cash to the trust (the "Cash Transfers") to keep the funds from creditors while paying the Devines' country club dues and personal expenses, (iii) titling a $2.1 million interest in real property in the name of the BRBRC Trust to hide the value from Ron Devine's creditors (the "SFC Equity Transfer"), (iv) engaging in a sham strawman "loan" transaction to allow Mr. Devine to siphon off $350,000.00 to keep the funds from his creditors (the "Strawman/SLD Transaction"), and (v) allowing the Devines to use the personal and joint bank accounts of the BRBRC Trust's co-

conspirators to deposit at least $42,078.00 to keep the funds from the Devines' creditors (the "Payne Transfers"), while using the same accounts to pay the Devines' personal expenses.[1]

11.    Based on the foregoing, the Complaint asserts nine (9) causes of action, including claims for unfair and deceptive trade practices, avoidance and recovery of fraudulent transfers, civil conspiracy, conversion, aiding and abetting fraudulent transfers, stay violations and conversion.  The Complaint seeks treble damages.

## II. The Motion to Compel and Related Sanctions Proceedings

12.    I filed a *Motion to Compel* on May 7, 2024 (the "Motion"), [Doc. 43], based on the BRBRC Trust's failures to respond to my discovery requests.

13.    After protracted litigation over the Motion and related compliance and sanctions proceedings, the Court entered its *Order Imposing Sanctions, Including Striking Defendant BRBRC Irrevocable Trust's Answer and Entering Default Judgment* on September 4, 2025 (the "Order"). [Doc. 130].

14.    In the Order, the Court sanctioned the BRBRC Trust for, among other things, its repeated failures to make discovery and comply with orders compelling discovery throughout the course of this adversary proceeding.  *Order*, pp. 7-10.

15.    As a result, the Court, among other things, struck the BRBRC Trust's answer, authorized me to take entry of default, and authorized me to schedule a damage calculation hearing. *Order*, p. 17, ¶¶ 3, 5 & 6.

16.    This declaration is submitted in connection with the Court's Order and my request for the entry of the Judgment.

---

[1] The Cash Transfers, SFC Equity Transfer, Strawman/SLD Transaction and Payne Transfers are collectively referred to as the "Transfers" in this declaration.

### III. Preliminary Statement on Damages

17.     In the Complaint, I am seeking, on behalf of the Debtor's creditors, actual damages from the BRBRC Trust based on the amount of the Transfers in the amount of $3,158,330.52.

18.     The Complaint seeks to recover actual damages related to the Transfers under various legal theories including the avoidance and recovery of fraudulent transfers, breach of fiduciary duty, civil conspiracy, conversion and unfair and deceptive trade practices.

19.     The Complaint also seeks to treble the amount of the actual damages (for an overall damage award of $9,474,991.56) because it is my understanding that fraudulent conveyances and conversion claims are unfair and deceptive trade practices under North Carolina law, which Transfers substantially harmed the Debtor's creditors.

20.     As set forth below, the measure of the requested actual and treble damages are for a sum certain or can be made certain by computation as I understand those terms.

### IV. Calculation of damages

21.     As reflected in the Judgment, the plaintiff is entitled to an award of monetary damages in the amount of $9,474,991.56.   A breakdown and itemization of damages is summarized in the following chart:

| Transactions | Damages Amount |
| --- | --- |
| Cash Transfers | $666,252.52 |
| Strawman/SLD Transaction | $350,000.00 |
| Payne Transfers | $42,078.00 |
| SFC Equity Transfer | $2,100,000.00 |
| Actual Damages Sub-Total | $3,158,330.52 |
| Actual Damages Trebled | $9,474,991.56 |

22.     I specifically address each component of damages below and in the attached charts and supporting documents.

*The actual amount of the damages caused by the Transfers is $3,158,330.52*

23.     The measure of actual damages related to the Transfers is for a sum certain or can be made certain by computation as I understand those terms because they: (i) can be calculated based on the applicable banking records, or (ii) can be quantified based on the judicial admissions of the BRBRC Trust and the deposition testimony of Mr. Devine, the BRBRC Trust's settlor and beneficiary.

24.     The actual amount of the damages caused by the Transfers is set forth in the following table with reference to the charts and documents attached to this declaration:

| Transfers | Exhibit(s) to this Declaration | Amount |
|---|---|---|
| Cash Transfers | Exhibit A | $666,252.52 |
| Strawman/SLD Transaction | Exhibit B | $350,000.00 |
| Payne Transfers | Exhibit C | $42,078.00 |
| SFC Equity Transfer | Exhibits D & E | $2,100,000.00 |
| **Total Damages** | | $3,158,330.52 |

25.     **Exhibit A**.  Exhibit A is a calculation of the portion of the Transfers that were defined as the "Cash Transfers" in the Complaint.  Exhibit A specifically itemizes by date and amount each applicable payment that is identified in the Complaint.  The calculation set forth in Exhibit A is based on the deposits into the Wells Fargo Bank account titled in the name of the BRBRC Trust (with account number ending 9115) in connection with the Devines' asset concealment scheme alleged in the Complaint.

26.     **Exhibit B**.  Exhibit B is a calculation of the portion of the Transfers that were defined as the "Strawman/SLD Transaction" herein and identified in the Complaint.  Exhibit B specifically itemizes by date, amount and account each applicable payment that is identified in the Complaint.  The calculation set forth in Exhibit B is based on the deposits Mr. Devine made

into his personal assistant's Wells Fargo bank account (with account numbers ending 7089 and

3800) in connection with the Devines' asset concealment scheme alleged in the Complaint.

27.    **Exhibit C**. Exhibit C is a calculation of the portion of the Transfers that were

defined as the "Payne Transfers" in the Complaint. Exhibit C specifically itemizes by date,

amount and account each applicable payment that is identified in the Complaint. The calculation

set forth in Exhibit C is based on the deposits made to the BRBRC Trust's prior trustee's United

Bank account (with account number ending 1975) and Wells Fargo Bank accounts (with account

numbers ending 5376 and 4611) in connection with the Devines' asset concealment scheme

alleged in the Complaint.

28.    **Exhibits D & E**. Exhibits D and E evidence the portion of the Transfers that

were defined as the "SFC Equity Transfer" in the Complaint. The SFC Equity Transfer relates to

Mr. Devine causing an interest he owned in real property to be transferred to and titled in the

name of the BRBRC Trust as part of the Devines' asset concealment scheme. Exhibit D is the

complaint filed by BRBRC Trust in the Circuit Court of Fairfax County, Virginia in the case

captioned *BRBRC Trust v. Green & Gold Properties, LLC et al.*, Case No. 2022-15414 (the

"Virginia Action"). In the Virginia Action, the BRBRC Trust affirmatively stated in its

complaint that its interest in the subject real property was worth at least $2.1 million and

demanded judgment in that amount. Exhibit E is an excerpt from Mr. Devine's deposition in the

Virginia Action where he confirmed that the BRBRC Trust's interest in the subject real property

was worth in excess of $2 million.

### *The actual amount of the Transfers must be trebled to equal $9,474,991.56*

29.    It is my understanding that: (i) fraudulent transfers and transferring property with

the intent to hinder, delay, or defraud creditors are unfair and deceptive trade practices under

North Carolina law, (ii) conversion claims are also unfair and deceptive trade practices, and (iii)

actual damages must be trebled where violations of the Unfair and Deceptive Trade Practices Act (the "Act") are found.

30.     Accordingly, the First Claim for Relief in the Complaint seeks damages to creditors caused by making the Transfers pursuant to the Devines' asset concealment scheme in violation of the Act. *Complaint* ¶¶ 135-141. The Complaint also seeks treble damages as provided for under the Act. *Id.* at p. 32, ¶ 2.

31.     As alleged in the Complaint, the actions of the BRBRC Trust, the Devines and their co-conspirators in fraudulently transferring and concealing the Transfers totaling $3,158,330.52 harmed the Debtor's creditors—including the Internal Revenue Service, its lender, trade creditors and unpaid employees—because: (i) the asset concealment scheme transferred millions of dollars away from the reach of creditors, (ii) the Transfers prevented creditors from collecting their unpaid debts or obtaining judgments that could be satisfied, and (iii) the Transfers had a harmful and damaging effect on commerce.

32.     Finally, the requested award of treble damages is for a sum certain or a sum that can be made certain by computation. My understanding is that trebling actual damages is mandatory where violations of the Act are found. Accordingly, the actual amount of the damages caused by the Transfers totals $3,158,330.52, as discussed above, and the statutory trebling of that amount is $9,474,991.56 based on a simple computation.

### *The Plaintiff has incurred $350 in costs.*

33.     The Plaintiff incurred and paid a $350 filing fee associated with filing this adversary proceeding.

34.     While I incurred other costs in prosecuting this action, such as PACER, ECF and copying charges, I have not allocated them specifically to this case and have not included them in the Judgment.

35.     Accordingly, the Judgment reflects an award of costs to Plaintiff in the amount of
$350.

## **VERIFICATION**

Pursuant to 18 U.S.C. § 1746, I, Matthew W. Smith, certify under penalty of perjury
under the laws of the United States of America that the foregoing is true and correct to the best
of my knowledge.

_____

Matthew W. Smith

_____

Date: December 23, 2025

# Exhibit A

Exhibit A - Cash Transfers to BRBRC Trust account ending 9115

| Posting Date | Amount | Posting Date | Amount | Posting Date | Amount |
|---|---|---|---|---|---|
| 9/7/2018 | $50,000.00 | 3/22/2021 | $1,500.00 | 5/6/2022 | $3,000.00 |
| 10/23/2018 | $6,000.00 | 4/7/2021 | $800.00 | 5/10/2022 | $3,600.00 |
| 11/13/2018 | $2,500.00 | 4/19/2021 | $3,500.00 | 6/6/2022 | $150.00 |
| 12/19/2018 | $22,000.00 | 5/4/2021 | $4,000.00 | 6/28/2022 | $4,000.00 |
| 1/4/2019 | $17,000.00 | 5/5/2021 | $107.81 | 7/6/2022 | $1,600.00 |
| 2/14/2019 | $12,500.00 | 5/28/2021 | $2,500.00 | 8/17/2022 | $5,000.00 |
| 3/15/2019 | $18,000.00 | 6/8/2021 | $4,000.00 | 9/6/2022 | $100,000.00 |
| 3/29/2019 | $22.53 | 6/14/2021 | $2,500.00 | 9/14/2022 | $3,400.00 |
| 5/21/2019 | $2,500.00 | 6/22/2021 | $1,000.00 | 9/29/2022 | $2,500.00 |
| 5/30/2019 | $500.00 | 7/19/2021 | $3,500.00 | 10/11/2022 | $3,000.00 |
| 5/31/2019 | $700.00 | 7/26/2021 | $2,500.00 | 10/27/2022 | $3,500.00 |
| 7/2/2019 | $4,500.00 | 8/9/2021 | $3,500.00 | 11/14/2022 | $3,500.00 |
| 7/31/2019 | $7,500.00 | 9/14/2021 | $1,000.00 | 11/29/2022 | $3,000.00 |
| 8/8/2019 | $11,000.00 | 9/14/2021 | $3,000.00 | 12/7/2022 | $2,750.00 |
| 9/6/2019 | $1,500.00 | 9/21/2021 | $500.00 | 12/23/2022 | $3,725.00 |
| 10/11/2019 | $7,500.00 | 9/30/2021 | $2,650.00 | 12/23/2022 | $90,000.00 |
| 10/18/2019 | $3,000.00 | 10/27/2021 | $5,000.00 | 1/11/2023 | $3,000.00 |
| 12/12/2019 | $20,000.00 | 11/12/2021 | $750.00 | 1/17/2023 | $895.00 |
| 2/3/2020 | $100.00 | 11/22/2021 | $1,700.00 | 1/26/2023 | $3,700.00 |
| 3/13/2020 | $159.20 | 12/14/2021 | $2,800.00 | 2/13/2023 | $2,100.00 |
| 3/27/2020 | $6,175.88 | 12/17/2021 | $2,000.00 | 2/21/2023 | $800.00 |
| 4/2/2020 | $4,500.00 | 12/22/2021 | $2,000.00 | 2/27/2023 | $800.00 |
| 5/13/2020 | $32,500.00 | 1/12/2022 | $300.00 | 2/28/2023 | $1,500.00 |
| 6/25/2020 | $90,000.00 | 1/18/2022 | $79.10 | 3/1/2023 | $300.00 |
| 10/7/2020 | $2,000.00 | 1/18/2022 | $300.00 | 3/6/2023 | $1,000.00 |
| 10/15/2020 | $2,500.00 | 1/21/2022 | $500.00 | 3/14/2023 | $500.00 |
| 11/6/2020 | $3,000.00 | 1/24/2022 | $500.00 | 3/21/2023 | $5,600.00 |
| 11/25/2020 | $4,000.00 | 2/1/2022 | $400.00 | 4/17/2023 | $2,900.00 |
| 12/4/2020 | $1,000.00 | 2/7/2022 | $3,000.00 | 4/26/2023 | $800.00 |
| 12/23/2020 | $3,000.00 | 2/7/2022 | $128.00 | 5/9/2023 | $1,000.00 |
| 2/5/2021 | $5,000.00 | 2/25/2022 | $1,000.00 | 5/9/2023 | $900.00 |
| 2/26/2021 | $5,000.00 | 3/9/2022 | $3,000.00 | 5/10/2023 | $900.00 |
| | | 3/23/2022 | $500.00 | 5/10/2023 | $100.00 |
| | | 3/28/2022 | $560.00 | **Total** | **$666,252.52** |

# Exhibit B

Exhibit B – Strawman/SLD Transaction

| Date | Amount | Payee Acct | Payee Bank | Account Holder at Payee Bank |
|------|--------|-----------|------------|------------------------------|
| 7/28/2019 | $50,000.00 | -7089 | Wells Fargo Bank | Nancy O'Haro |
| 8/28/2020 | $300,000.00 | -3800 | Wells Fargo Bank | Nancy O'Haro |
| **Total** | **$350,000.00** | | | |

# Exhibit C

Exhibit C - Payne Transfers

| Date | Amount | Payor | Payee | Payee Acct | Payee Bank | Account Holder at Payee Bank |
|------|--------|-------|-------|------------|------------|------------------------------|
| 7/27/2020 | $5,000.00 | BRBRC Trust | Darrin Payne | -1975 | United Bank | Darrin L Payne DBA DLP Tax & Accounting Services |
| 8/28/2020 | $2,500.00 | Property Services | Darrin Payne | -1975 | United Bank | Darrin L Payne DBA DLP Tax & Accounting Services |
| 11/9/2020 | $2,500.00 | US Financial Companies | DLP Tax Services | -1975 | United Bank | Darrin L Payne DBA DLP Tax & Accounting Services |
| 1/21/2021 | $1,000.00 | Property Services | BRBRC Trust | -5376 | Wells Fargo | Darrin L Payne & Felicia A Payne |
| 2/5/2021 | $2,000.00 | US Financial Companies | Darrin Payne | -5376 | Wells Fargo | Darrin L Payne & Felicia A Payne |
| 4/26/2021 | $2,000.00 | US Financial Companies | Darrin Payne | -5376 | Wells Fargo | Darrin L Payne & Felicia A Payne |
| 6/14/2021 | $2,500.00 | US Financial Companies | BRBRC Trust | -5376 | Wells Fargo | Darrin L Payne & Felicia A Payne |
| 8/9/2021 | $3,000.00 | US Financial Companies | Darrin Payne | -4611 | Wells Fargo | Darrin L Payne & Felicia A Payne |
| 10/1/2021 | $3,150.00 | US Financial Companies | Darrin Payne | -4611 | Wells Fargo | Darrin L Payne & Felicia A Payne |
| 12/17/2021 | $1,500.00 | US Financial Companies | Darrin Payne | -4611 | Wells Fargo | Darrin L Payne & Felicia A Payne |
| 12/22/2021 | $3,000.00 | US Financial Companies | Darrin Payne | -5376 | Wells Fargo | Darrin L Payne & Felicia A Payne |
| 2/4/2022 | $128.00 | Pie Group Holdings | A & R Foods Inc | -5376 | Wells Fargo | Darrin L Payne & Felicia A Payne |
| 3/28/2022 | $2,200.00 | US Financial Companies | Darrin Payne | -5376 | Wells Fargo | Darrin L Payne & Felicia A Payne |
| 7/29/2022 | $500.00 | US Financial Companies | DLP Tax Services | -4611 | Wells Fargo | Darrin L Payne & Felicia A Payne |

Exhibit C - Payne Transfers

| 7/29/2022 | $100.00 | US Financial Companies | DLP Tax Services | -4611 | Wells Fargo | Darrin L Payne & Felicia A Payne |
|-----------|---------|------------------------|------------------|-------|-------------|----------------------------------|
| 8/10/2022 | $11,000.00 | Nancy O'Haro | Darrin Payne | -4611 | Wells Fargo | Darrin L Payne & Felicia A Payne |
| **Total** | **$42,078.00** | | | | | |

# Exhibit D

SPS

### COMMONWEALTH OF VIRGINIA
### CIRCUIT COURT OF FAIRFAX COUNTY
### 4110 CHAIN BRIDGE ROAD
### FAIRFAX, VIRGINIA 22030
### 703-691-7320
### (Press 3, Press 1)

**BRBRC Trust vs. Green & Gold Properties LLC et al.**

CL-2022-0015414

TO:     **Green & Gold Properties, LLC**
        **Serve: R/A - Nicola E. Castel, Esq.- at The**
        **Castel Law Firm**
        **42637 Bradfords Telegraph Ct**
        **Chantilly, VA 20152- 0000, USA.**

### SUMMONS – CIVIL ACTION

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the Clerk's office of this Court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment or decree against such party either by default or after hearing evidence.

APPEARANCE IN PERSON IS NOT REQUIRED BY THIS SUMMONS.

Done in the name of the Commonwealth of Virginia, on November 16, 2022.

JOHN T. FREY, CLERK

By: _____
                **Deputy Clerk**

**Plaintiff's Attorney:  J. Chapman Petersen**



**FAIRFAX CIRCUIT COURT**
**CIVIL CASE COVERSHEET**      **2022   15414**

**Parties:**

| Plaintiffs | Defendants |
|---|---|
| 1. BRBRC TRUST | 1. GREEN & GOLD PROPERTIES, L.L.C |
| 2. | 2. BRIAN M. CASTEL, AN INDIVIDUAL |
| 3. | 3. |

*Plaintiff proceeding without Counsel – Address and Daytime Phone Number required on Complaint

**Plaintiff Attorney:**

Name: J. CHAPMAN PETERSEN        Bar ID: 37225

Firm: CHAP PETERSEN & ASSOCIATES

Street: 3970 CHAIN BRIDGE ROAD

City: FAIRFAX        State: VA        Zip: 22030

Phone Number: 571-459-2510        Fax Number: 571-459-2307

E-mail Address: JCP@PETERSENFIRM.COM

**Nature of Complaint** (Check only one)        * Cases in the Civil Tracking Program

| | | |
|---|---|---|
| Administrative Appeal | Defamation * | Malpractice Medical * |
| Affirmation of Marriage | Delinquent Taxes * | Mechanics/Vendors Lien * |
| Aid & Guidance | Eminent Domain | Partition * |
| Appeal Decision of Board of Zoning | Encumber/Sell Real Estate | Personal Injury – Assault * |
| Appeal of Process/Judicial Appeal | Erroneous Assessments | Personal Injury – Auto * |
| Appointment Church/Organization Trustees | Expungement | Personal Injury – Emotional * |
| Arbitration | False Arrest/Imprisonment* | Personal Injury – Premises Liability* |
| Attachment | Fiduciary/Estate Complaint | Property Damage* |
| Complaint – Equity * | Garnishment–Federal–180 days | Products Liability* |
| ☒ Complaint – Legal Cause of Action * | Garnishment–Wage–180 days | Quiet Title * |
| Compromise Settlement | Garnishment–Other – 90 days | Real Estate * |
| Condemnation* | Guardian/Conservator Adult | Restoration of Driving Privilege |
| Confession of Judgment | Guardianship/Minor | Vital Record Correction |
| Construction * | Injunction | Writ Habeas Corpus |
| Contract * | Interpleader | Writ Mandamus |
| Conversion* | Insurance * | Wrongful Death* |
| Court Satisfaction of Judgment | Judicial Review | Wrongful Discharge * |
| Declare Death | Malicious Prosecution * | OTHER: |
| Declaratory Judgment * | Malpractice – Legal * | |

Damages in the amount of $ 2,100,000.00        are claimed.

Requested Service: Sheriff ☐ Private Process Server ☒ DMV ☐ Secretary of Commonwealth ☐ State Corporation Commission ☐ Publication ☐ No Service at this time ☐

**VIRGINIA:**

FILED
CIVIL INTAKE

2022 NOV 14 PM 3: 52

CLERK, CIRCUIT COURT
FAIRFAX, VA

## IN THE CIRCUIT COURT OF THE COUNTY OF FAIRFAX

**BRBRC TRUST,**

     Plaintiff,

     *v.*

**GREEN & GOLD PROPERTIES, L.L.C.**
<u>Serve</u>: R/A – Nicola E. Castel, Esq. – at The
Castel Law Firm – 42637 Bradfords Telegraph
Ct., Chantilly, VA 20152 – 0000, USA.

     And

**BRIAN M. CASTEL,** *AN INDIVIDUAL*
4000 Legato Road
Suite 1100
Fairfax VA 22033

     Defendants.

Case No.:    **2022  15414**

## COMPLAINT

COMES NOW, Plaintiff BRBRC Irrevocable Trust ("The Trust" or "Plaintiff"), by counsel, who hereby states the following in support of his Complaint against Green & Gold Properties, L.L.C. ("G&G") and Brian M. Castel ("Castel") (collectively with G&G, the "Defendants"):

### Introduction

1.     This matter concerns a windfall received by G&G and Castel, after they deceived the owner of commercial real property in Prince William County, Virginia regarding their intentions of "flipping" the property and sharing the resulting proceeds. The real estate, which had been owned by the Trust's predecessor-in-interest, Ronald Devine ("Devine"), through a 50% share in a limited liability company, was purchased in August 2018 by G&G, acting through Castel (its Managing Member) at a discount price of $600,000. The discounted price was negotiated by Devine with the

assumption that G&G would resell the property for $1.5 million to an outside purchaser arranged by Devine and then pay over the profits to the Trust, after certain debts and expenses had been deducted. That purchaser later withdrew, but the parties had already agreed that Devine could find a replacement buyer – otherwise, it would never have sold the property at a discounted price to G&G. However, prior to Devine procuring that replacement, G&G sold the property in 2022 to an outside party for $3.0 million, without any notice to Devine or the Trust. The "outside sale" has led to a windfall of over $2.0 million to G&G and left the Trust with nothing. There is a remedy.

### Parties and Jurisdiction

2.      The Trust is an irrevocable trust formed under the laws of the Commonwealth of Virginia. The Trustee is Mr. Darrin Payne. The Trust was formed in 2018 and is the successor-in-interest to properties (and interests in said properties) formerly owned by Devine.

3.      G&G is a Virginia Limited Liability Company in active status.

4.      Castel is an entrepreneur who resides in Fairfax, Virginia.

5.      Pursuant to Virginia Code § 8.01-328.1, venue and jurisdiction in this Court is proper as the underlying agreement, the breach thereof, and the resulting dispute have all occurred in Prince William County, Virginia.

### Statement of Facts

6.      In 2018, Devine was the co-owner of an LLC, S.F.C. Properties LLC ("SFC") which held title to a property known as the "Airport Commerce Center," with an address of 10941 Samuel Trexler Drive, Manassas, Virginia 20110 ("the Property").

7.      At that time, Devine was a 50% owner of the owner SFC. The property, which was zoned for development, had a tax assessed value of $1.524 million.

1

8.    The other co-owner of SFC sought to withdraw from the Property as long it received its initial investment which was $600,000.00.   Devine agreed to find a buyer to permit his partner to withdraw with his initial equity repaid.

9.    At the same time, Devine was approached by an outside party, HAF Real Estate 1 LLC ("HAF Real Estate"), which sought to purchase the Property for $1.55 million.

10.    When HAF Real Estate refused to commit to a closing date, Devine approached G&G, and its owner Castel, in order to buy out the other partner, hold the title temporarily, and then "flip" the Property to HAF Real Estate.   Notably, G&G was another local real estate developer with whom Devine had done business and already owed a judgment worth $241.001.67 ("the Judgment"), which it promised to pay from the HAF Real Estate proceeds.

11.    The Trust negotiated the following deal with the relevant parties:

a.   It agreed that G&G would purchase the Property from SFC for the discounted purchase price of $600,000 ("the Discounted Purchase Price") with 100% of the proceeds going to the former partner;

b.   It further agreed that G&G would then turn around and sell the Property to HAF Real Estate for $1.55 million ("the True Purchase Price"), which would be divided as follows:

i.   G&G would be reimbursed for paying over the Discounted Purchase Price, plus any costs of the sale, as well as receive satisfaction of the Judgment;

ii.   The Trust, which had been recently formed by Devine, would receive the remaining sales proceeds arising from the True Purchase Price;

  iii. The Trust would provide a W-9 to G&G reflecting its actual profit on the deal, so the latter would not have to pay "capital gains" on the difference between the True Purchase Price and the Discounted Purchase Price.

12. On August 29, 2018, Castel forwarded a proposed contract ("the Proposed Contract") to the Trust, which reflected those terms.  A copy of the Proposed Contract is attached as Exhibit A and incorporated herein.

13. That same day, Devine on behalf of the Trust responded to the Proposed Contract by emailing directly to Castel about the future of the Property, should the future sale to HAF Real Estate not close.  In the August 29th email, a copy of which is attached as Exhibit B and incorporated herein, he stated as follows:

> We need to broaden this to allow the sale to a third party other than HAF.  Also the way this is drafted if the next sale doesn't happen before 9/28/18 [sic][1] you are not obligated to pay anything to the Trust ... Under this Agreement you can sell for $900K and I get nothing .... I need to protect the Trust ... *provided you still get whole once we resell the property the Trust should get any excess proceeds.*  Please make the changes and we'll roll.

> (Emphasis added).

14. Following the exchange of emails, Castel and Devine spoke by phone on behalf of their respective entities.  Castel verbally agreed to expand the scope of the Agreement to cover any sales occurring besides HAF 1.    Based upon that agreed expansion, Devine (and the Trust) agreed to proceed with selling the Property for the Discounted Purchase Price.

15. Prior to the sale, there was a meeting of the minds, and thus an agreement ("the Agreement") of the Trust and G&G on the salient terms, i.e. that the Property would be sold to G&G at the Discounted Purchase Price, with the understanding that its return on any future sale would be

---

[1] The word "before" is a typo, as Devine can only be referring to a sale that would occur "after" September 28, 2018, i.e. more than thirty (30) days from the date of the Agreement. Any sale "before" September 28 would already be subject to the Agreement.

limited to its investment, plus any related costs, and the satisfaction of the Judgment. The remaining proceeds would belong to the Trust.

16. On August 30, 2018, the parties completed "Step One" by selling the Property from SFC to G&G for the Discounted Purchase Price of $600,000.[2]   See email dated August 30, 2018 from the Trust's counsel with closing documents attached.

17. Subsequent to that date, HAF Real Estate decided not to close on the Property. As a result, G&G was left as the sole owner of the Property.

18. Initially, G&G reiterated its intention to comply with the Agreement by releasing any excess proceeds from an outside sale to G&G, once the Discounted Purchase Price, plus costs, and Judgment had been paid off.

19. However, Castel on behalf of G&G on or about December 1, 2019 informed Devine that he had resold the Property for $600,000 in order to recoup his investment and nothing more. Therefore, there were no additional proceeds to share

20. In fact, this was a false statement. Rather, upon information and belief, G&G and Castel had transferred the Property to an affiliated company for a listed price of $1.5 million. Assuming there was an actual transaction, none of these proceeds were shared with the Trust. Nor was the Judgment marked as satisfied.

21. As a result of Castel's false statement, which was relied upon by the Trust, there was no effort made by the Trust to find a third-party buyer or otherwise. Instead, the Trust assumed (wrongly) that the opportunity had been lost.

---

[2]      In addition to buying the Property from SFC, G&G and Castel also contemporaneously loaned $50,000 to the Trust as a down payment on its share of proceeds from the planned future sale – which further evidenced their agreement to the "resale" terms. (That loan would be part of the costs to be recovered by G&G once the property was sold to an outside party).

22. In the summer of 2022, the Trust learned that G&G had sold the Property in fall 2021 through its affiliate to an outside purchaser without informing (much less compensating) the Trust, who had made the Property available at a discounted price.

23. Upon information and belief, that 2021 price was $3.0 million which represented a 500% increase (in three years) over the Discounted Purchase Price.

24. Notably, this 2022 realization by the Trust occurred after G&G had used the Judgment — wrongfully not marked as "satisfied" — to put a lien on other Trust properties, as well as properties held by Devine personally.

### Count I – Breach of Contract
### (Against Defendants)

25.     The Trust incorporates by reference the paragraphs alleged above.

26.     The Trust had a meeting of the minds with G&G ("the Agreement") on August 29, 2018 in which the parties agreed that the proceeds from any future sale of the Property would be shared according to the terms stated in the Proposed Agreement exchanged on that date.

27.     Sufficient consideration and partial performance was exchanged by the parties for the Agreement to be enforceable, i.e. G&G arranged for the Property to be sold to G&G in August 2018 at the Discounted Purchase Price.

28.     The Trust fulfilled all of its obligations under the agreement by selling the Property at the Discounted Purchase Price. G&G breached the contract by failing to share the proceeds when it (i) sold the Property to an affiliate for $1.5 million or (ii) the affiliate sold the Property to an outside purchaser in 2021 for $3.0 million.

29.     The foregoing alleged breaches are a material breach of the Agreement by Defendants.

30.     Defendants have failed to cure the material breaches or come into compliance with the foregoing obligations.

31.     As a result of Defendants' purposeful actions, Devine has been damaged for an amount not less $2.1 million, which includes the 2022 purchase price minus the initial G&G investment of $600,000, plus any sales and carry costs for the Property, and the Judgment amount.

### Count II – Unjust Enrichment
### (Against Defendants)

32.     The Trust incorporates by reference the paragraphs alleged above.

33.     The actions by G&G in this matter were dishonest and deceptive.  They directly led to G&G acquiring the Property at a discount and then keeping all the profits therefrom, with the exception of the aforementioned loan, despite having pledged to share the proceeds with the Trust. The Trust relied upon G&G's promise and has been damaged by the dishonest conduct.  It would be inequitable for G&G to retain this unjust enrichment from acquiring the Property which equals at least $2.1 million.

### Prayer For Relief

WHEREFORE, in light of the foregoing, Plaintiff BRBRC Trust, by counsel, hereby requests that this Honorable Court enter an order:

A.     Awarding Plaintiff compensatory damages for an amount not less than not less $2.1 million, plus prejudgment interests, costs and expenses;

B.     For any other relief that the Court deems as necessary or just.

Dated: November 14, 2022                                   Respectfully submitted,
                                                           Ronald Devine

                                                           By Counsel

By: _____

J. Chapman Petersen, Esq., VSB #37225
Federico J. Zablah, Esq., VSB #96031
CHAP PETERSEN & ASSOCIATES, PLC
3970 Chain Bridge Road
Fairfax, Virginia 22030
(571) 459-2521 (direct dial)
(571) 459-2307 (facsimile)
jcp@petersenfirm.com
*Counsel for Plaintiff*

# Exhibit E



# Transcript of Ronald C. Devine

**Date:** January 23, 2024
**Case:** BRBRC Trust, et al. -v- Green and Gold Properties, LLC, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

1    V I R G I N I A:

2        IN THE CIRCUIT COURT OF FAIRFAX COUNTY

3    ------------------------------------
     BRBRC TRUST, et al.,                :
4                                        :
         Plaintiffs,                     :
5                                        :
         -v-                             :  Case No.
6                                        :  2022-15414
     GREEN AND GOLD PROPERTIES, L.L.C. :
7                                        :
     and                                 :
8                                        :
     BRIAN CASTEL,                       :
9                                        :
         Defendants.                     :
10   ------------------------------------

11

12       VIDEOTAPED DEPOSITION OF RONALD C. DEVINE

13                   Fairfax, Virginia

14              Tuesday, January 23, 2024

15                     9:58 a.m.

16

17

18

19

20   Job No.:  521307

21   Pages:  1 - 230

22   Reported by:  Paula Flint

1        VIDEOTAPED DEPOSITION OF RONALD C. DEVINE,

2   conducted at the law offices of:

3

4

5                      DYCIO & BIGGS

6                    10533 Main Street

7                Fairfax, Virginia 22030

8                    (703) 383-0100

9

10

11

12

13        Pursuant to agreement, before Paula Flint,

14   Notary Public of the Commonwealth of Virginia.

15

16

17

18

19

20

21

22

| | | |
|---|---|---|
| 1 | Q. To the best of your knowledge, how | 15:46:21 |
| 2 | much was the property sold for? | 15:46:22 |
| 3 | A. Three million dollars in November of | 15:46:23 |
| 4 | 2021, I believe. | 15:46:25 |
| 5 | MR. BIGGS: Objection. | 15:46:27 |
| 6 | A. And then ultimately again it sold -- | 15:46:27 |
| 7 | including the front piece, I believe for just | 15:46:31 |
| 8 | under $6 million. | 15:46:34 |
| 9 | MR. BIGGS: Note my objection to | 15:46:36 |
| 10 | foundation and hearsay. | 15:46:36 |
| 11 | MR. ZABLAH: That's fine. | 15:46:39 |
| 12 | THE WITNESS: Hearsay? | 15:46:41 |
| 13 | BY MR. ZABLAH: | 15:46:42 |
| 14 | Q. Based on the $3 dollar -- | 15:46:43 |
| 15 | A. I got that from the HUD-1. | 15:46:44 |
| 16 | Q. Based on the $3 million sale, how much | 15:46:46 |
| 17 | would have been the excess proceeds payable to | 15:46:50 |
| 18 | the trust? | 15:46:52 |
| 19 | A. So his initial outlay was $600,000. | 15:46:56 |
| 20 | If you put a carry of some sort on that, that | 15:46:58 |
| 21 | would be a number. The 241 would have been | 15:47:02 |
| 22 | another number. But in general he would have | 15:47:04 |

1    still been under a million dollars.  There would          15:47:06

2    have been an excess of $2 million left over that          15:47:09

3    should have come to the BRBRC trust.                      15:47:12

4        Q.    Okay.                                           15:47:15

5        A.    But roughly he was in it maybe 900k,            15:47:15

6    with his 241 maybe 950, depending on what kind            15:47:18

7    of -- if it's five percent or ten percent carry           15:47:23

8    on the 600k.                                              15:47:28

9        Q.    Okay.  To this date do you have                 15:47:32

10   knowledge of who G and G or Castel's investor            15:47:39

11   was?                                                      15:47:44

12       A.    No clue.  Big mystery.                           15:47:45

13       Q.    We discussed a couple of emails in              15:47:51

14   which Mr. Castel agreed to a 25k release for a            15:47:53

15   one property or a 45k release for both of the             15:47:57

16   Manassas properties.  Is that correct?                    15:48:01

17       A.    Correct.                                         15:48:03

18       Q.    Were either of those amounts ever               15:48:04

19   paid?                                                     15:48:06

20           MR. BIGGS:  Objection, relevance.                 15:48:06

21       A.    No, they were not.  And again it was a          15:48:08

22   perk issue.  I never was doing both.  I never             15:48:12

1    CERTIFICATE OF SHORTHAND REPORTER - NOTARY PUBLIC

2

3              I, Paula Flint, the officer before

4    whom the foregoing deposition was taken, do

5    hereby certify that the foregoing transcript is a

6    true and correct record of the testimony given;

7    that said testimony was taken by me

8    stenographically and thereafter reduced to

9    typewriting under my direction; that reading and

10   signing was not requested; and that I am neither

11   counsel for, related to, nor employed by any of

12   the parties to this case and have no interest,

13   financial or otherwise, in its outcome.

14             IN WITNESS WHEREOF, I have hereunto

15   set my hand and affixed my notarial seal this

16   6th day of February 2024.

17   My commission expires January 31, 2027.
     Notary Registration Number:  277127

18

19   _Paula M. Flint_

20   _____

21   Paula Flint

22